Slip Op. 17- 42

## UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| **DAVIS WIRE CORP. AND INSTEEL WIRE PRODUCTS COMPANY,**<br><br>            Plaintiffs,<br><br>      v.<br><br>**UNITED STATES,**<br><br>            Defendant,<br><br>          and<br><br>**THE SIAM INDUSTRIAL WIRE CO., LTD.,**<br><br>            Defendant-Intervenor. | **Before: Timothy C. Stanceu, Chief Judge**<br><br>**Court No. 14-00131** |

## OPINION

[Sustaining a determination made on remand by the International Trade Administration]

Dated: April 13, 2017

*Kathleen W. Cannon* of Kelley Drye & Warren LLP, of Washington DC, argued for plaintiffs Davis Wire Corporation and Insteel Wire Products Company. With her on the brief were *David C. Smith, Jr.*, and *R. Alan Luberda*.

*Agatha Koprowski*, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, DC, argued for defendant United States. With her on the brief were *Joyce M. Branda*, Acting Assistant Attorney General, *Jeanne E. Davidson*, Director, *Reginald T. Blades, Jr.*, Assistant Director.

*Edward M. Lebow* of Haynes & Boone LLP, of Washington DC, argued for defendant-intervenor The Siam Industrial Wire Co., Ltd.

Stanceu, Chief Judge: In this action, plaintiffs Davis Wire Corporation and Insteel Wire Products Company contested a negative less-than-fair-value determination ("Final Determination") issued by the International Trade Administration, U.S. Department of

Commerce ("Commerce" or the "Department") following an antidumping duty investigation of prestressed concrete steel tie wire ("PC tie wire") from Thailand. *Final Determination of Sales at Not Less than Fair Value: Prestressed Concrete Steel Rail Tie Wire from Thailand*, 79 Fed. Reg. 25,574 (Int'l Trade Admin. May 5, 2014) ("*Final Determination*"). In the Final Determination, Commerce calculated a 0.00% weighted-average dumping margin for Siam Industrial Wire Company, Ltd. ("SIW"). Because SIW was the sole exporter/producer investigated, Commerce terminated the investigation without issuing an antidumping duty order.

Before the court is the remand ("Remand Redetermination") issued by Commerce in response to the court's order in *Davis Wire Corp. v. United States*, 40 C.I.T. __, 180 F. Supp. 3d 1187 (2016) ("*Davis Wire I*"). *Final Results of Redetermination Pursuant to Remand* (Sept. 21, 2016), ECF No. 56 (confidential), ECF No. 57 (public) ("*Remand Redetermination*"). In *Davis Wire I*, the court affirmed in part, and remanded in part, the Department's Final Determination. *Davis Wire I*, 40 C.I.T. at __, 180 F. Supp. 3d at 1201. In the Remand Redetermination, Commerce modified its calculation of SIW's weighted average dumping margin, but the result again was a margin of 0.00%. *Remand Redetermination* at 9.

Neither plaintiffs nor defendant-intervenor has filed comments with the court on the Remand Redetermination. Because the Remand Redetermination complies with the order issued in *Davis Wire I* and because no party has raised an objection, the court sustains the Remand Redetermination.

## I. BACKGROUND

The court's prior opinion in *Davis Wire I* presents background information on this case, familiarity with which is presumed.

## II. Discussion

The court exercises jurisdiction according to section 201 of the Customs Courts Act of 1980, 28 U.S.C. § 1581(c), under which the court may review an action brought under section 516A(a)(2) of the Tariff Act of 1930 ("Tariff Act"); *see* 19 U.S.C. § 1516a(a)(2)(A), (a)(2)(B)(ii). Upon judicial review, the court "shall hold unlawful any determination, finding, or conclusion found . . . to be unsupported by substantial evidence on the record, or otherwise not in accordance with law . . . ." *Id.* § 1516a(b)(1)(B)(i).

In responding to the court's order in *Davis Wire I*, the Remand Redetermination addresses two issues, both of which pertain to the exclusion of below-cost sales from the determination of normal value. These issues were the calculation of the cost of certain wire rod SIW used as a production input and the calculation of SIW's general and administrative expenses.

In contesting the Final Determination, plaintiffs argued that Commerce improperly calculated SIW's cost of production with respect to certain Grade 82B 13 mm wire rod that SIW used in the production of PC tie wire. Specifically, plaintiffs alleged that Commerce, when averaging the cost of this production input over the period of investigation, erroneously included only the wire rod from the inventory of SIW's "PC Wire" division, which produced PC tie wire, and failed to include in the average the cost of the 13 mm wire rod in the inventory of SIW's "PC Strand" division, which produced "PC strand," prestressed concrete steel reinforcing bar. *Davis Wire I*, 40 C.I.T. at __, 180 F. Supp. 3d at 1197. Plaintiffs alleged that both inventories were used in the production of the PC tie wire. *Id.* At defendant's request, the court granted a voluntary remand so that Commerce could reconsider the issue. In the Remand Redetermination, Commerce found that "wire rod used in the production of PC tie wire was also

used to manufacture PC strand" and that "[b]ased on this evidence, the identical raw materials (*i.e.*, grade 82B 13 mm wire rod held in inventory in the PC Strand division) should also be included as part of the weighted-average raw materials consumption cost in the cost of production (COP) calculation, in accordance with the Department's normal practice." *Remand Redetermination* 5. Using cost data for this input that Commerce considered representative, Commerce made an upward adjustment in SIW's wire rod costs. *Id.* at 5-6. By doing so, Commerce responded to the court's directive and reached a finding supported by substantial record evidence.

The second issue on remand pertained to plaintiffs' argument that the ratio the Department calculated for SIW's general and administrative ("G&A") expenses failed to include the value of certain information technology services provided to SIW by its parent company, Tata Steel. *See Davis Wire I*, 40 C.I.T. at __, 180 F. Supp. 3d at 1199. Upon considering this argument, the court stated that it "is unable to identify on the record substantial evidence to support the Department's finding that the value of IT services Tata Steel reportedly provided to SIW was reflected in the G&A ratio." *Id.*, 40 C.I.T. at __, 180 F. Supp. 3d at 1200. The court ordered Commerce to reconsider the issue and to modify or explain its decision, as appropriate. *Id.*, 40 C.I.T. at __, 180 F. Supp. 3d at 1201. In the Remand Redetermination, Commerce expressly found that Tata Steel invoiced SIW monthly for the costs of the IT services. Commerce explained that "it is reasonable to conclude that the invoices received from Tata Steel were then entered into SIW's accounting records, and further that these cost amounts were ultimately reflected in the audited financial statements of the company that served as the starting point in the Department's reconciliation of total production costs and G&A expenses at verification." *Remand Redetermination* 6-7. Commerce further explained that the IT expenses

were not individually itemized and that Commerce did not select these expenses for individual examination at verification. *Id.* at 7. Commerce added that its "conclusion is supported by the results of its verification testing procedures, which did not identify any unreported G&A expense items" and that "[t]he absence on the record of detailed information on SIW's IT service expenses cannot serve as evidence that SIW has therefore not accounted for its payments to Tata Steel." *Id.* at 8. The court considers this explanation reasonable. An agency is permitted to draw reasonable inferences from the record evidence. *Campbell v. Merit Sys. Prot. Bd.*, 27 F.3d 1560, 1564 (Fed. Cir. 1994) (stating that courts are required to defer to an agency "as long as the record contains evidence from which one reasonably could draw the challenged inference"). Here, the inference that the IT expenses were included within the G&A expenses SIW reported is reasonable given the limitations of the company's business records, the positive results of the verification, which found based on sampling that in general costs were properly accounted for, and the Department's practical need to conduct sampling during verification as opposed to detailed examination of every individual cost item.

### III. CONCLUSION AND ORDER

For the foregoing reasons, the court sustains the Remand Redetermination. Judgment will enter accordingly.

/s/ Timothy C. Stanceu
Timothy C. Stanceu
Chief Judge

Dated: April 13, 2017
       New York, New York